UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>JOHN MICHAEL DICHIARA, et. al.,<br><br>　　　　Defendants. | No.　2:15-cr-190-GEB<br><br>**DECISION STRIKING THE COURT'S PROPOSED VOIR DIRE QUESTION 14 AND DISCUSSING THE JUDGE'S DISCRETIONARY DECISION AS TO WHETHER TO GIVE FIFTH AMENDMENT ADMONISHMENTS** |

　　　　The Court has decided to delete the following question from the Court's proposed voir dire filed September 7, 2017, and which is docketed as document 240: "14.　Do you have any bias in favor or against Catholicism?"　This question was included in the Court's proposed voir dire in response to Defendant John DiChiara's following statements in his trial brief concerning "Jury Voir Dire":

> As referenced in the government's trial brief, witnesses are likely to testify as to certain representation about Mr. DiChiara and his affiliation with the church.　The alleged statement will focus on Mr. DiChiara and his capacity as an Archbishop for the church and/or affiliation with the Catholic church. Because of the religious overtones of this case, specific voir dire attention should be given to addressing any bias held by the jury based upon their religious beliefs or lack of religious affiliation.　**Because the issue of religion can be a very sensitive issue for some people, it is requested that the Court voir dire the jury on this issue rather than counsel. Requiring counsel to address this**

1

**issue may cause undue bias and prejudice against Mr. DiChiara.**

Def. DiChiara's Trial Br., 10:20-26, ECF No. 227 (Emphasis added).

DiChiara subsequently filed on September 7, 2017, the following proposed vior dire, which he titled "Proposed Jury Instructions":

> It is requested that the court provide the jury the following introduction, or something similar, prior to asking any questions about religion.
>
> "During the testimony in this case, you may hear evidence that a church or religion was somehow involved in the allegation alleged in the indictment. For that reason, I need to briefly inquire into your religious beliefs to make sure you can be a fair and impartial juror. If you feel uncomfortable talking about your religious beliefs in open court, please raise your hand and I will see what can be done to accommodate your concerns. Once I have concluded my questions, the attorneys may have some follow up questions. Please understand that each case is unique and the questions that all of us are asking are designed to determine whether you can be a fair and impartial juror in this particular case. It is not intended to reflect on your ability to sit as a juror in a different case with different facts."
>
> 1. Do you belong to a religious organization such as a church, synagogue, or mosque?
>    a. If yes:
>       - How often do you attend religious services?
>       - Do you consider yourself to be a religious person?
>       - Do your family and friends consider you to be a religious person?
>       - How important is your religious training to how you live your life?

- Do you make major life decisions based on religious principles?
- What religious thinkers or teachers are most important to you?
- Are you involved in activities related to your place of worship other than attendance at religious services?
- Do you hold any offices in your place of worship?
- How will your beliefs influence your perception of the case?

b. If no:

- Do you consider yourself to be a religious person?
- Do your family and friends consider you to be a religious person?
- How would you describe your feelings about religion?
- If you have children: What are you teaching your children about religion?
- What, if any, religion were you raised in?
- How often did you attend religious services?
- Did you consider yourself to be a religious person?
- Were you involved in activities related to your place of worship other than attendance at religious services?
- How does that experience influence the person you are now?

2. Do you believe that a church must have a Judeo-Christian origin or be based on a belief in God, to be lawfully recognized as a church?

3. Are you familiar with the Church of

3

Scientology?

      a. Do you understand that the Church of Scientology does not require its members to believe in God?

      b. Are you aware that there are other churches like the Church of Scientology that do not require its members to believe in God?

      c. Do you believe that churches like the Church of Scientology, ones that aren't based on a belief in God, are somehow not legitimate churches?

    4. Do you understand that what qualifies as a lawful church is determined by the IRS?

    5. If the IRS determined an organization to qualify as a church, even though it may not be based on a belief in God, would you still accept it as a church?

Def. Dichiara's Proposed Jury Instr., ECF No. 239.

On March 15, 2017, the Government filed a Notice of Intent to Introduce Evidence under Federal Rules of Evidence 404(b)("Gov't. 404(b) Notice"), arguing, inter alia:

> The United States hereby provides notice of its intent to introduce evidence pursuant to Federal Rules of Evidence 404(b) relating to defendant John Michael DiChiara, in order to show intent, common scheme or plan, absence of mistake, or accident. As required by Rule 404(b), the government hereby notifies the defendants of "the general nature of such evidence" that the government intends to introduce in its case in chief at trial: The government intends to introduce evidence that DiChiara was engaged in a similar mortgage elimination scheme in the Sacramento area that predated his involvement in the charged scheme. DiChiara used his church, Shon-te-East, to recruit distressed homeowners with a promise that their mortgage loans would be cleared from title and their mortgage debt would be eliminated. This earlier scheme ended in approximately 2009.

Gov't. 404(b) Notice, 1:17-28, ECF No. 116.

4

DiChiara seeks to exclude the evidence, which the United States contends is admissible under Rule 404(b), arguing, inter alia:

> The government intends to introduce evidence that DiChiara was engaged in a similar mortgage elimination scheme in the Sacramento area in 2009 that predated his involvement in the charged scheme. The government contents that DiChiara used his church, Shon-te-East, to recruit distressed homeowners with a promise that their mortgage loans would be cleared from title and their mortgage debt would be eliminated. The government proffer that the evidence of this earlier scheme will include, without limitation, the testimony of homeowners involved in the earlier scheme, testimony and documentary evidence from county recorders, testimony and documentary evidence from financial institutions, and statements made by DiChiara.
>
> Subsequently, the government has identified and approximately 10 individuals who have been interviewed by the FBI and HUD. The gravamen of those interviews is that each of the persons interviewed were of Russian decent and contacted fellow members of the Russian community, and particularly, the Russian Church, about assisting them in stopping a foreclosure on their property. Few of the people interviewed even met or had contact with John DiChiara. And to the extent they purportedly did, there is no evidence that the person they spoke to or met was in fact John DiChiara or merely someone purporting to be John DiChiara. It should be noted, John DiChiara is not Russian and is not a member of the Russian community and none of the persons interviewed claimed to be a member of any church associated with Mr. DiChiara.

Def. DiChiara's Opp'n to Rule 404(b) Evid., 2:21-28, 3:1-13, ECF No. 138.

DiChiara's insistence that the court conduct voir dire on the "issue of religion" is rejected. Def. DiChiara's Trial

5

Br., 10:25.

> As to religion, our jury selections system was not designed to subject prospective jurors to a catechism of their tenets of faith, whether it be Catholic, Jewish, Protestant, or Mohammedan, or to force them to publicly declare themselves to be atheists. Indeed, many a juror might have a real doubt as to the particular religious category into which they could properly place themselves.

United States v. Barnes 604 F.2d 121, 141 (2d Cir. 1979.

"A judge serves the interest of justice by keeping potentially distracting information under wraps." United States v. Alarape (7th Cir. 1992) 969 F.2d 349, 351. Voir dire questions should not seek to force jurors to discuss issues not germane to "determin[ing whether a potential juror has] . . . bias or prejudice." Darbin v. Nourse, 664 F.2d 1109, 1112-13 (9th Cir. 1981).

Further, the following assertion in Defendant George Larsen's trial brief is addressed: the Court is required to admonish "[a]ny witness called by the government who was involved, but not charged, with the real estate transactions at issue." Def. Larsen's Trial Br., 3:7-9, ECF No. 228. "[The witnesses] should be admonished they have a right under the Fifth Amendment not to answer questions that might incriminate them." Id. at 3:7-10.

The defendant has not provided any authority supporting this assertion. Whether an advisement is given, is solely within the discretion of the judge. See United States v. Scully, 225 F.2d 113, 116 (2nd Cir. 1955) ("[T]he mere possibility that the witness may later be indicted furnishes no basis for requiring

6

that he be advised of his [or her] rights under the Fifth Amendment, when summoned to give testimony before a . . . Jury."); see also Thompson v. Henry, No. 1:05CV00141 ALA HC, 2008 WL 4058074, at *16 (E.D. Cal. Aug. 28, 2008)(indicating it is the judge's discretionary decision whether to warn a witness about his or her right not to testify).

Dated: September 8, 2017

GARLAND E. BURRELL, JR.
Senior United States District Judge